*COUNTY COURT OF FAYETTE vs. LEXINGTON AND BIG SANDY R.R. Co.*

---

# County Court of Fayette vs. Lexington and Big Sandy Railroad Company.

APPEAL FROM FAYETTE CIRCUIT.

Case 33.

PET. EQ.

1. To authorize a county court to make a subscription in aid of the construction of the Lexington and Big Sandy railroad, under the statute on that subject, (*Session Acts of* 1851-2, *page* 786,) it was necessary that the election for ascertaining the sense of the voters of the county as to the making of such subscription should have been ordered by the county court, on the application of the officers of the railroad company. And a vote taken in any other way did not authorize the subscription, by the county court, of stock in said railroad.

2. The payment by the county court to the officers who held the election without authority, could not give validity to an election which was illegal.

COUNTY COURT
OF FAYETTE
*vs.*
LEXINGTON AND
BIG SANDY R. R.
Co.

[The facts of the case are stated in the opinion of the court.—REP.]

*Robinson & Johnson* for appellant—

1. The objection to the judgment of the circuit court awarding the mandamus is, that there has been no legal vote obligatory upon the citizens of Fayette county. It is not pretended that the law has been complied with, but it is contended that the duty of the county court being ministerial only, and not admitting of any discretion, the non-action of the court is immaterial and the vote good. We contend that in a legal sense no vote has been taken; that the persons who assumed to act as judges, sheriffs, clerks, &c., in taking the vote, were mere usurpers, having no authority to open the polls, or decide on the qualification of voters; and that no legal credence is due to the returns of votes taken by them. This court cannot say, as the circuit court did, that the election was fair, or that a single .qualified voter of the county cast his vote, or that the whole return is not fictitious. When the law gives credence to the statements of an individual, it is because the law constitutes him as the agent to do the act and make the statement. Here no such authority has been conferred by any lawfully constituted tribunal. The whole action in regard to the election was a mere nullity.

2. The county court was not guilty of any neglect in this matter. How could the county court obtain the necessary information on which to act? It could not act upon rumor or newspaper information. It was the business of the president and directors to make known by credible evidence, such as an authentic copy of their order, that the order was made and the action of the county court desired. Upon that being done, it would have been the duty of the county court to have appointed judges and clerks, and have ordered the sheriff to cause the election to be held, after giving due notice, and thus to have insured a full and fair expression of the sense of the

voters of the county. Although it was a matter of duty to appoint the proper officers to open the polls, there is a wide margin for judgment and discretion as to the measures to be taken to bring the election to the knowledge of the voters, and for securing not only a fair but a full expression of their sense upon the proposition.

It is not perceived by counsel that there is any force in the position taken by the circuit judge, and the counsel for appellee, that the action of the county court was ministerial only. When a statute authorizes a thing to be done upon the performance of certain ministerial acts, it is indispensable that these ministerial acts shall be strictly performed to render the act valid. The processioning of land—the division of land—the sale of infants' estates—are examples.

We regard the judgment of the circut court as erroneous.

*Geo. Robertson* for appellee—

The company had a right, without the co-operation of the county court, to take the vote. Non-co-operation, or even a refusal to make any provision for taking the vote, by the county court, could not affect the chartered rights of the company. To facilitate the company, the charter imposed on the county court the ministerial duty of opening the polls, and taking all *necessary* measures for taking the sense of the qualified voters. Facility to the company, and security against illegality, were the objects of that requisition.

Had the county court refused to act, no cause has been shown for impeaching or invalidating the vote as taken and admitted. Failure to do its own duty cannot be pleaded by the county as avoiding what appears to have been well done according to the charter, by others authorized to do it.

But the county judge did direct the polls to be opened, and did recognize the legality of the vote.

County Court of Fayette
vs.
Lexington and Big Sandy R. R. Co.

County Court
of Fayette
*vs.*
Lexington and
Big Sandy R. R.
Co.

And, the charter prescribing no form for doing this —in or out of court, on the record or otherwise— that which was required was substantially done, and all the objects of the requisition and of the law, in regard to the vote of Fayette, have been accomplished. The acts required and done were *merely ministerial.*

**July 8.**

Judge Stites delivered the opinion of the court:

The 28th section of an act, entitled, "an act to incorporate the Lexington and Big Sandy Railroad Company," (*Session Acts* 1851–52, *page* 786,) authorizes the county of Fayette to subscribe $150.000 as capital stock in said company, and among other things provides, that "it shall be lawful for the president and directors of said company, after giving six week's notice thereof, by advertisement in the papers of the said several cities and counties wherein a vote shall be proposed, (or if there be no paper printed in any county in which a vote shall be proposed, then in such paper as may have a general circulation in such county,) upon a day named in such advertisement, to take the sense of the qualified voters of said cities and counties, or any one or more of them, as to the policy of said cities and counties, or any one or more of them, becoming subscribers to the stock in said railroad company, to any amount which may have been proposed in said notice, not exceeding the respective sums above specified; and it shall be the *duty* of the mayor and council of the city of Lexington, and all other cities, *and of the county courts* of the several counties, *upon the day named* in said printed notice, *to open columns in the* various precincts of said cities and counties, and *to take all necessary measures for correctly ascertaining* the sense of the qualified voters of their respective cities and counties, at the polls thereof, as aforesaid; and, provided a majority of all the qualified voters of any of said cities or counties, who shall have cast their votes at said election, shall be in favor of the said several subscrip-

COUNTY COURT
OF FAYETTE
vs.
LEXINGTON AND
BIG SANDY R. R.
Co.

tions of stock as proposed to such city or county, it shall be the duty of the mayor and council of every such city, to pass an ordinance *not exceeding the sum specified in said printed notice;* [manifestly intending, but casually omitting, to provide by such ordinance for a subscription of stock to a sum "not exceeding," &c.,] and it shall be the duty of the county court of every such county, in like manner to empower and direct their clerk to subscribe for the amount of stock authorized by the voters of said county, not exceeding the sum specified in said printed notice," &c.

Under the foregoing provision the president and directors of said company made an order requiring a vote of the citizens of Fayette county, upon the policy of said county subscribing capital stock in said company, to the amount of $150,000, to be taken on the 5th day of February, 1853, and advertised the same, as prescribed by law, in newspapers or a newspaper published in that county, for six weeks next preceding the day upon which the vote was to be taken.

Under this order and notice, and under the advice or suggestions of the then presiding judge of the county court, given and made in vacation, but without any order of said county court, appointing officers to "open columns" and hold said election, or providing, in any way, for the opening of columns in the various precincts of said county, or for the correct ascertainment, by necessary measures, of the sense of the qualified voters of said county, upon the proposed subscription, as required by the statute; the sheriff and other officers, who had been previously acting as officers and judges of elections, proceeded, in conformity with the requisitions of the railroad company, on the day named in the notice, to open polls and take the vote of the citizens of the county, in the several precincts thereof, upon the proposed subscription of $150,000.

Upon this proposition, thus submitted, it appears that there were, in the county of Fayette, seven hun-

County Court
of Fayette
vs.
Lexington and
Big Sandy R. R.
Co.

dred and eighty-seven votes cast; five hundred and seventy-eight in favor of, and two hundred and nine against it. Showing a majority of three hundred and sixty nine, of the votes cast, in favor of the subscription.

After this vote had been taken, and in the same or next month—it does not appear certainly which—an application—whether formal or informal does not appear—was made to the county court, for an order directing its clerk to subscribe, in behalf of the county, for capital stock in said company to the amount named in the proposition. This was denied. Again, in 1855, after an interval of near two years, a formal application, by motion, was made in the county court for the requisite order, directing the clerk to subscribe for the stock, and it was likewise denied. Thereupon, a petition was filed by the officers of the railroad company, in the circuit court, setting forth, substantially, the foregoing facts, with others not deemed material; and asking for a rule against the county court, to show cause why a peremptory *mandamus*, compelling said court to make the subscription, should not be awarded, &c.

To this rule the county court responded, resisting the issual of a mandamus, upon various grounds, but mainly because of the irregularity in the mode of taking the vote upon the question of subscription, and insisting that the sense of the qualified voters of the county upon the question had never been ascertained in such manner as imposed upon that body the duty of making the subscription.

Upon hearing, the peremptory *mandamus* asked for by the railroad company was awarded, and from that order the county court has appealed.

The only question directly made in the record, or in argument, and which we shall proceed to consider is, whether the preliminary and precautionary measures, contemplated and prescribed by the legislature, for the purpose of ensuring, as far as practicable, a correct ascertainment of the sense of the

qualified voters of the county or city, where propositions for subscriptions of stock were thus authorized to be made, have been so observed and pursued in the present case, as made it, in the language of the act, "the duty of the county court" of Fayette to order the subscription to be made.

It is obvious, from an examination of the act in question, that the legislature was apprised of some of the abuses that might attend the extraordinary power conferred upon the officers of the company, allowing them, at their option as to time, upon the requisite notice, to compel, by an election or vote, an expression of the sense of the voters of the county upon such propositions for subscriptions of stock, within the limits prescribed, as they might choose to submit. It may be assumed that they well knew that if no restrictions were imposed, as to the mode in which such vote was taken, the grossest frauds might be perpetrated, and most onerous and oppressive burthens, in the shape of taxes, thereby unjustly and iniquitously imposed. Hence the necessity of interposing some supervisory agency or power, which should appoint officers of the polls, confer upon them the requisite power to superintend the taking of the vote, to prevent persons from voting who were not qualified voters, to secure the right to those who were, to suppress fraudulent and illegal voting, and otherwise so to conduct the election as to ascertain, with all possible accuracy, the sense of the qualified voters of the county, as to the policy of taking the amount of stock proposed by the company.

The authority conferred upon the county courts and city authorities, to subscribe for the stock, is made to depend altogether on the condition that the proposed subscription shall have met with the approving sense of a majority of the qualified voters, who shall have voted upon the proposition. The principle upon which such authority is alledged to be founded, and which is constantly urged in its favor,

COUNTY COURT
OF FAYETTE
vs.
LEXINGTON. AND
BIG SANDY R. R.
Co.

County Court
of Fayette
vs.
Lexington and
Big Sandy R. R.
Co.

is, that it is consonant with the spirit of our government, and is but carrying into effect the will of a majority of the voters in reference to a public improvement, by enabling such majority, through the agency of the county court or corporate authorities, to accomplish that which is alledged to be beneficial to the whole, but which, except for the power thus conferred by such majority, could not be attained.

Thus it was all important that the sense of a majority of the qualified voters, casting their votes at such election, should be correctly ascertained. To have omitted a provision for this end, would have been unwise indeed, and might have defeated the very object of the law requiring such vote. By such omission, and by entrusting the election to irresponsible or interested persons, not deriving their appointment because of their integrity and capacity, from · the constituted authorities of the land usually making such appointments, the will or sense of a minority, and not that of a majority, might, in many cases —through the fraud or misconduct of those having control of the election, and responsible alone to the company for their conduct as officers of the election —prevail.

Sensible of this, and alive to the importance of securing, in a legal and regular manner, the sense of a majority of the qualified voters of the county, voting upon such proposed subscription, the legislature wisely entrusted the opening of the polls, and the appointment of officers to conduct such election, to the county court, and empowered it—indeed made it the imperative duty of the court—"to take *all necessary* measures for *correctly* ascertaining the sense of the qualified voters," &c., upon the proposition.

It is thus, and in conformity with such measures as may be deemed necessary by the county court, to ascertain *correctly* the sense of the voters, that the election is required to be held. The officers conducting it are to derive their authority from the county court, and to pursue such orders or measures as it may pre-

COUNTY COURT
OF FAYETTE
vs.
LEXINGTON AND
BIG SANDY.R.R.
Co.

scribe to attain the desired object, to-wit: the correct ascertainment of the sense of the voters upon the proposition submitted.   The language and spirit of the provision does not, in our opinion, fairly admit of any other construction.

But it is said that the duty thus imposed upon the court was ministerial, and if neglected to be performed should not. in the absence of any other objection to the election, avail, in behalf of the court, to defeat the *mandamus*.

The duty is ministerial in its character, but like other ministerial duties imposed by law, its performance must conform to the conditions and requisitions of the law.

When, then, did its duty commence, and how was it to be performed?

It began only when officially or formally apprised, in term time, by the officers of the railroad company, of the day when the election was to be held. The county court could not, as a court, be cognizant of the publication of the company's order in a newspaper.   Courts are presumed to know the law, and to be judicially cognizant of many things, but not of the orders or notices of elections directed by corporations.   Their acts are not entitled to more consideration than those of an individual.   When apprised by an appropriate motion, showing the day fixed by the company for the election, for taking the vote, it became the duty of .the county court to take the necessary steps and measures, by appointing officers, or conferring, by order, additional authority upon the election officers then in office, to open columns and conduct the election for the purpose desired.

Until such application was made, or until the county court was otherwise appropriately informed of the day selected and fixed for the election demanded by the company, it had no duty to perform. Neither had such court any right, upon the election held as here, by persons acting without its appointment or authority, but simply upon a suggestion of a

County Court
of Fayette
vs.
Lexington and
Big Sandy R. R.
Co.

member, or the judge of the court, made in vacation, and entitled, therefore, to no more consideration or consequence than that of any other individual, to make any order for the subscription of the stock proposed.

It could not as a court, except in the mode prescribed, know that a majority of the qualified voters, voting upon the proposition, had cast their votes in favor of the proposition. Its action, in ordering the subscription to be taken, is only authorized when informed in the mode prescribed, that the result of the vote has been favorable to the subscription; and there would be as much propriety in dispensing with the vote itself, as with the mode of conducting the election by which the result of such vote can alone be ascertained, and communicated to the county court.

In the case of *Slack vs. Maysville, &c.*, determined by a majority of this court, the county court had taken the preliminary steps for the election required by the charter, and the question now made was not then presented. Nor do we perceive any thing in the principles established by the opinions in that case, at all variant from, or inconsistent with, the positions here assumed. So with regard to the case of *Withrow vs. the Marion County Court.* There the necessary preliminary steps for holding the election had also been taken by the county court; and the point now presented. is for the first time, that we are aware of, up directly for adjudication.

We are, therefore of opinion that the election for ascertaining the sense of a majority of the qualified voters of a county, upon a proposition of the railroad company for the subscription of stock, is required, by the statute, to be holden under, and in pursuance of, appropriate and necessary orders of the county court of such county, to be made on the application of the officers of the company, apprising such court of the day selected for such election, and that an election held, or vote taken, in any other mode, with-

1. To authorize a c'ty court to make a subscription in aid of the construction of the Lexington and Big Sandy railroad, under the statute on that subject, (*Sess. Acts of* 1851-2, *page* 786,) it was necessary that the

out such orders or authority of such court, does not furnish any authority to the county court to order the subscription proposed to be taken. And, as such election, in such mode, and in pursuance of the requisite orders of the court, was not held in this case, that the county court was not properly compellable, by *mandamus* or otherwise, to take the stock as demanded by the appellees.

We have not deemed it necessary to notice, particularly, the intimation that the payment of the officers of the election by the county court, for their services in holding the election relied on, should be deemed a recognition of their authority to hold such election. Such officers had no right, without the previous orders of the county court, to hold such election, and their acts were therefore void; and the county court could not, by a subsequent recognition, impart any legal efficacy to them. The previous authority was indispensable.

Wherefore, the judgment of the circuit court, compelling, by *mandamus*, the county court of Fayette county to subscribe for $150,000 of the capital stock of the Lexington and Big Sandy Railroad Company is reversed, and cause remanded with instructions to dismiss the petition of the appellees.

election for ascertaining the sense of the voters of the county as to the making of such subscription should have been ordered by the c'ty court, on the application of the officers of the railroad company. And a vote taken in any other way did not authorize the subscription, by the county court, of stock in said railroad.

2. The payment by the c'ty court to the officers who held the election without authority, could not give validity to an election which was illegal.